TOM MYERS
Tom.Myers@aidshealth.org
AIDS HEALTHCARE FOUNDATION
6255 Sunset Boulevard, 21st Floor
Los Angeles, CA 90028
Telephone: (323) 860-5200
Facsimile: (323) 467-8450

ANDREW F. KIM
AKim@kimrileylaw.com
REBECCA J. RILEY
RRiley@kimrileylaw.com
KIM RILEY LAW
9018 Balboa Boulevard, # 552
Northridge, CA 91325
Telephone: (818) 216-5288

Attorneys for Plaintiff
AIDS HEALTHCARE FOUNDATION

# UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIDS HEALTHCARE FOUNDATION D/B/A PHC CALIFORNIA,<br><br>            Plaintiff,<br>   v.<br><br>CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES and MICHELLE BAASS,<br><br>          Defendant. | **CASE NO.:** 2:22-CV-06636<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

1.      Plaintiff AIDS Healthcare Foundation doing business as PHC California ("AHF") sues defendants the Department of Health Care Services and Michelle Baass (collectively "DHCS") for violations of the 1ˢᵗ Amendment to the Constitution of the United States and of Article 1, Sections 2(a) and 3(a) of the California Constitution and alleges as follows:

## **INTRODUCTION**

2.      For over 27 years, AHF has continually contracted with DHCS to provide medical Medicaid services to Medi-Cal recipients with a diagnosis of Acquired Immune Deficiency Syndrome ("AIDS"). Pursuant to its contracts with DHCS, AHF operates a special needs health plan known as "Positive Healthcare."

3.      Since 2019, AHF provides this care entirely on a capitated basis, meaning DHCS pays AHF a set monthly amount for each Positive Healthcare member, and AHF is responsible for providing all types of Medi-Cal benefits (e.g., medical, in-patient, and out-patient) to Positive Healthcare members, regardless of the actual cost. In ensuring the provision of the Medi-Cal benefits, AHF is responsible for giving Positive Healthcare members access to an extensive network of doctors, HIV primary care physicians, sub-specialist physicians, other allied health professionals, clinics, hospitals, and outpatient facilities. AHF painstakingly built a model of care and specialized network it maintains for the Positive Healthcare special needs plan.

4.      Positive Healthcare was a trailblazer, the first capitated AIDS Medicaid plan in the country. There are currently around 811 Los Angeles County residents enrolled in Positive Healthcare.

5.      The contracts at issue with respect to the Positive Healthcare special needs plan (the "Contract") are set to expire on December 31, 2022. DHCS has

taken the position that it will not extend or amend the Contract, notwithstanding AHF's contention that DHCS is contractually required to do so.[1]

6.     On September 8, 2022, DHCS revealed a Constitutionally prohibited reason for refusing to extend or amend the Contract:

> However, last fall, AHF engaged in inappropriate negotiation tactics, including sending unapproved notices to their members without obtaining pre-approval of those notices from DHCS. The presumed intention of those notices was to make AHF members think that they would soon lose their care manager and services from AHF and cause members to contact DHCS in protest.

DHCS admitted that it refuses to extend or amend the Contract based on AHF's speech concerning matters of public importance and interest directed at Positive Healthcare members. DHCS acknowledged the possibility that Positive Healthcare members may react to AHF's speech by engaging in Constitutionally protected conduct, which DHCS wanted to discourage, if not prevent.

7.     DHCS impermissibly refuses to extend or amend the Contract based on the exercise (and potential exercise) by AHF and Positive Healthcare members of their rights to speak, to protest, and to petition the government. In addition, DHCS retaliated against AHF and Positive Healthcare members for their exercise (and potential exercise) of these same rights. DHCS' conduct violates the First Amendment to the United States Constitution and Article I, Sections 2(a) and 3(a) of the California Constitution.

## **PARTIES**

8.     Established in 1987, AHF is a California not-for-profit, tax exempt,

---

[1] DHCS's refusal to extend or amend the Contract is the subject to an ongoing administrative proceeding as well as a Petition for Writ of Administrative Mandamus to be filed in Sacramento Superior Court on September 1, 2022, both of which are unrelated to, and do not involve, alleged Constitutional violations by DHCS. The Contract's dispute resolution provisions do not cover alleged governmental Constitutional violations.

501(c)(3) corporation headquartered in Los Angeles County. AHF is the world's largest provider of health care services to people living with Human Immunodeficiency Virus ("HIV") and/or AIDS and is the largest private-sector provider of HIV/AIDS medical care to people in the United States. AHF's mission is to provide cutting edge medical care to people living with HIV/AIDS regardless of their ability to pay, and AHF provides medical care (including prescription drugs services) and advocacy to more than 1.6 million patients in 45 countries, including the United States. AHF primarily serves patients of limited economic means, including the indigent.

9.      In Los Angeles County, AHF operates 9 health care centers, 7 brick-and-mortar accredited specialty pharmacies, an accredited Medi-Cal special needs plan for people living with AIDS, a Medicare advantage health plan for people living with HIV and AIDS, and currently serves approximately 7,600 patients in Los Angeles County, again approximately 811 of whom are PHC members.[2] AHF is an essential safety net provider for disenfranchised, high-risk residents of Los Angeles County and for Californians generally. Among other things, AHF is a provider of managed health care services to Medi-Cal recipients with AIDS.

10.      AHF was originally named AIDS Hospice Foundation and opened its first community-based hospice that year. In 1987, HIV and AIDS were considered death sentences as there was no effective treatment for AIDS, and AHF's mission was then to provide Los Angeles residents afflicted with AIDS a place and means to die with dignity. HIV/AIDS can now be treated with sophisticated medications – in particular, antiretroviral ("ARV") drugs – in combination with other medical care and support services, but these medications must be taken daily according to strictly observed regimens, for a patient's entire life.

---

[2] In the United States, AHF operates 84 health care centers and 62 pharmacies in 14 states, the District of Columbia, and Puerto Rico.

11.     Defendant DHCS is a governmental agency of the State of California, and Defendant Michelle Baass is the Director of that agency.

## JURISDICTION AND VENUE

12.     Subject matter jurisdiction exists under 28 U.S.C. § 1331 because this action arises under the First Amendment to the United States Constitution. With respect to claims based on violations of provisions of the California Constitution, subject matter jurisdiction exists under 28 U.S.C. § 1367, which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

13.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

14.     Venue is proper in the Central District of California under 28 U.S.C. § 1391(b)(2) and because a substantial part of the events or omissions giving rise to the claims in this Complaint occurred within this judicial district.

## FACTS

### Medi-Cal and DHCS

15.     Medi-Cal is California's Medicaid health care program. It is administered by the United States Department of Health and Human Services' Centers for Medicare and Medicaid Services ("CMS") and DHCS. Medi-Cal is supported by federal and state taxes. One in three Californians have Medi-Cal.[3]

---

[3] There are different ways to qualify for Medi-Cal. A family can qualify for Medi-Cal if its income is less than 138% of the poverty level, as defined. Other ways for qualifying are if a person is:
- 65 or older;
- Blind;
- Disabled;
- Under 21;
- Pregnant;

(Footnote continued)

AIDS HEALTHCARE FOUNDATION'S COMPLAINT

16.     The Medi-Cal program pays for a variety of medical services for children and adults with limited income and resources. DHCS seeks to fulfill its role as California's health care safety net by having the following mission and vision: "…to provide Californians with access to affordable high-quality health care, including medical, dental, mental health, substance use disorder services, and long-term services and supports…and to preserve and improve the physical and mental health of all Californians."[4]

### The Positive Healthcare Plan – Generally

17.     Since 1995, AHF has contracted with DHCS to provide quality managed health services to Medi-Cal recipients with AIDS under the PHC plan. Pursuant to the contract, AHF furnishes Medi-Cal healthcare benefits and services to enrolled Medi-Cal beneficiaries with AIDS in Los Angeles County and receives compensation for these services according to capitation rates determined and paid by DHCS. AHF has consistently fulfilled its obligations under the contracts pertaining to the Positive Healthcare plan, delivering not only superior managed health care to a medically vulnerable population, but also saving DHCS millions of dollars in health care costs.

18.     As noted, Positive Healthcare was a trailblazer, the first capitated AIDS Medicaid special needs plan in the country. The purpose of the Positive Healthcare special needs plan is to provide medical care and counseling and

---

•     In a skilled nursing or intermediate care home;
•     On refugee status for a limited time, depending how long you have been in the United States;
•     A parent or caretaker relative of an age eligible child;
•     Have been screened for breast and/or cervical cancer (Breast and Cervical Cancer Treatment Program).

[4]     https://www.healthforcalifornia.com/covered-california/health-insurance-companies/medi-cal?gclid=Cj0KCQjw39uYBhCLARIsAD_SzMTG6jQXnPQN7qeqFLSMFctdBX0Xfj-g2tGT1RWI6_GJkTxVgEfRHY0aAjUvEALw_wcB (last accessed September 15, 2022),

specialized care management, along with social service referrals, to some of the poorest, sickest, and most vulnerable people with AIDS in Los Angeles County. Positive Healthcare's membership exclusively consists of those patients whose HIV infection has progressed to an AIDS diagnosis, as defined in the most recently published Mortality and Morbidity Report from the United States Centers for Disease Control ("CDC"). Positive Healthcare members are at the far end of the spectrum of HIV disease, whose immune systems have been damaged to the point of being nearly incapable of fighting off any infections.

## The Positive Healthcare Special Needs Plan and
## AHF's Mission and Goals for Patient Care

19.     As noted, Positive Healthcare takes in only members whose immune systems have been ravaged by AIDS and carefully helps them rebuild their ability to fight disease. The Positive Healthcare special needs plan has been a success by any measure. In fact, Positive Healthcare's special needs plan has provided over the years thousands of Los Angeles residents living with AIDS exceptional, far above average health outcomes, while saving DHCS tens of millions of dollars in health care costs. Positive Healthcare has saved lives and has helped its members recover from diseases and complications brought on by years of erratic healthcare or no healthcare at all.

20.     Despite providing services far in excess of what is possible under the normal Medi-Cal fee-for-service system, the Positive Healthcare special needs plan has not only saved lives, but has saved the State tens of millions of dollars by reducing the need for medical services for Positive Healthcare members, making them less costly to treat than a comparable population in the Medi-Cal fee-for-service system.

21.     Consistent with its mission, AHF's goals with respect to each of its patients, including those enrolled in the Positive Healthcare special needs plan, are

to provide access to life-saving HIV/AIDS medications, counsel patients and promote adherence to their medication regimens, ultimately improving patients' health outcomes. AHF has observed that there are many possible reasons why someone living with HIV might not follow regimens or might even stop taking medicines, including lack of understanding of the serious nature of the disease, fatigue, side effects, fear of stigma, and co-existing health conditions like mental health or substance abuse issues or social challenges, such as homelessness. As discussed more fully below, AHF combats the many treatment and life challenges faced by its patients using a uniquely successful, complex, highly structured, integrated, coordinated care model developed, improved, and mastered over several decades treating and otherwise caring for people living with HIV/AIDS. This care model is offered by no other healthcare provider in Los Angeles County. The more residents of Los Angeles County use AHF's services, the more residents will thrive and live. In addition, the Positive Healthcare special needs plan contributes to the overall public health of the County; when Positive Healthcare members achieve undetectable viral loads of HIV (meaning that current tests cannot detect HIV), those members cannot transmit the HIV virus.

### AHF's Unique and Highly Successful Treatment Model for People Living With HIV/AIDS

22.    HIV is the virus that, left not properly treated, causes AIDS, among other serious, life-threatening maladies, up to and including death. In fact, some of the components for diagnosing AIDS pursuant to CDC guidelines involve certain potentially lethal opportunistic infections, like cancers.

23.    HIV is a complex virus. There is no vaccine, much less several vaccines, for HIV, as there are for COVID 19, another potentially fatal disease. Plainly put, HIV has defeated decades of work and study to develop an effective vaccine. Proper care and treatment are, therefore, paramount in effectively

combatting AIDS and, even more plainly put, keeping people living with AIDS alive. Positive Healthcare's program, focused only on AIDS, has allowed Los Angeles County residents of limited economic means to benefit from AHF's extensive, painstakingly compiled and maintained network of HIV/AIDS specialists across the entire spectrum of care, described below. For people living with HIV/AIDS, no other program like it exists.

24.     To ensure care under the Positive Healthcare special needs plan, AHF assigns a team of healthcare professionals – expert HIV primary care physicians, registered nurses, specialized registered nurse care managers, licensed practical nurses, mental health professionals, social workers, and others – to monitor members and aggressively manage their treatment. The Positive Healthcare special needs plan involves an integrated, coordinated care model focused on intensive, highly structured and rigidly scheduled drug regimens, including ARV drugs, and interaction between patients and various AHF expert service providers to ensure that AHF's patients receive all the information, care, and mediations necessary to live full lives. The purposes of this monitoring and management are to help Positive Healthcare members navigate the obstacles the indigent and those with limited economic means living with AIDS might face. AHF has become, as noted, intimately familiar with those obstacles and has learned that engagement and guidance are crucial to help overcome the stigma and, often, hopelessness that people living with AIDS often experience. AHF treats "the whole patient" using this approach, which practically means that AHF treats and helps Positive Healthcare members manage all kinds of medical and health problems.

25.     The complex, expensive network of caregivers necessary for the Positive Healthcare special needs plan does not build or maintain itself. In ensuring the provision of this care, AHF is responsible for developing, maintaining, and paying for a highly specialized network of doctors, clinics, hospitals, and other

caregivers that Positive Healthcare members can access and use for all of their healthcare needs. Creating and maintaining this network requires continuous forecasting, planning, and contracting months in advance.

26.     AHF's HIV primary care physicians, many of whom have been treating patients since the earliest days of the epidemic, meet the accreditation criteria of the American Academy of HIV Medicine or the Infectious Disease Society of America – HIV Medicine Branch. These expert physicians are dedicated to serving people living with HIV/AIDS and are among the most experienced in the country. They treat more HIV and AIDS patients daily than any other private provider group in the country and have unparalleled expertise treating patients living with HIV/AIDS. AHF has taken years putting together this team of highly trained, expert physicians.

27.     AHF's accredited specialty pharmacies fill more prescriptions for ARV and HIV/AIDS related drugs than any non-public entity. AHF has taken years to put together its network of pharmacies and obtaining specialty accreditation for those pharmacies. Many PHC members fill their prescriptions at AHF's accredited specialty pharmacies and thereby benefit from the expertise of AHF's pharmacists.

28.     *Crucially, all Positive Healthcare members are assigned a specific registered nurse to serve as their care manager. No other Medi-Cal based program in Los Angeles County provides such a registered nurse care manager for all its patients living with AIDS.* The registered nurse care manager carefully monitors the care plan established by each patient's primary care physician, answers healthcare questions the patient might have, and, perhaps most importantly, takes steps to ensure that patients remain adherent to their medication schedules, their provider appointments, and any other co-morbid therapies they may require. The registered nurse care manager assigned to each patient further assists the members by acting as a liaison to the patient's HIV primary care physician, by coordinating the various

components of care, and by assisting members in learning to manage their HIV disease, their co-morbid diseases, and navigating the health system. Registered nurse care managers perform crucial tasks, perhaps seen as mundane by those with economic means and private health insurance, like teaching patients about their disease, how to secure appointments with their physicians or with testing laboratories, or how to understand their test results, which correlate directly with better health outcomes.

29.     The level of service and carefully managed and monitored care provided by the Positive Healthcare special needs plan is far above what can be had through the traditional Medi-Cal fee-for-service system. This improves health outcomes and reduces the total cost of caring for Positive Healthcare members. And it is perhaps needless to say that this program and its level of care save lives otherwise lost.

30.     Without Positive Healthcare, notwithstanding that they are the sickest of the sick, only about 28 of Positive Healthcare's current population of around 811 individuals living with AIDS qualify for this type of care – referred to in the Medi-Cal system as Enhanced Care Management ("ECM") – through the Medi-Cal program, in particular, the California Advancing and Innovating Medi-Cal ("CalAIM") framework, by which DHCS seeks to use Medicaid to help address many of the complex challenges facing California's most vulnerable residents, such as homelessness and insufficient behavioral health care access, using a "whole-person" care approach. The "safety net" Medi-Cal alternatives to Positive Healthcare for Los Angeles County residents living with AIDS are L.A Care Health Plan ("L.A. Care"), which is operated by an independent local public agency created by the State to provide health coverage to low-income Los Angeles County residents, or the commercial plan HealthNet, which is a health management

organization. L.A. Care currently has more than 2.2 million members and is the nation's largest publicly operated health plan.

31.     Without Positive Healthcare, around 783 Los Angeles County residents living with AIDS, the sickest of the sick, would be stripped of the ability to obtain or use the services of a registered nurse care manager, whether a highly trained registered nurse or not, and will have their treatment monitored, if at all, and rendered among 2 million other Los Angeles County residents, the vast majority of whom do not have AIDS. For the approximately 28 Positive Healthcare members who are arguably eligible for an ECM care manager through L.A. Care or HealthNet, it is highly likely that these Positive Healthcare members would be unable to navigate the bureaucratic labyrinth to secure an ECM care manager – a classic "Catch 22." Without Positive Healthcare, DHCS will lose the potential for savings that the Positive Healthcare special needs plan provides, but, more importantly, the continuity of care will be disrupted for around 811 Los Angeles County residents living with AIDS with potentially deadly consequences. Those patients who do not meet the specific ECM criteria and are not sufficiently savvy to navigate the healthcare system on their own will be forced to accept a routine insurance model of self-directed care that is not tailored to managing the complicated AIDS disease. Without access to the Positive Healthcare special needs plan "whole person" approach, the successful outcomes repeatedly shown for these people living with AIDS will be no more.

## **The Applicable Contracts**

32.     Over the decades, the Positive Healthcare contract between AHF and DHCS has been changed and amended a number of times, primarily expanding the scope and range of medical care AHF provides. Not once did DHCS ever propose amendments that narrowed the scope or range of such medical care. Originally, the Positive Healthcare contract did not cover all care, such as hospital inpatient care.

AIDS HEALTHCARE FOUNDATION'S COMPLAINT

This changed over time until, on January 1, 2019, Positive Healthcare became a "fully capitated" program, meaning it was responsible for the entirety of patient care benefits and services.

33. Several contracts between AHF and DHCS have governed the Positive Healthcare special needs plan. At all relevant times, there have been two primary contracts - Contract Number 11-88286, which is referred to as the "Primary Contract," and Contract Number 20-10355, which is referred to as the "Hyde Contract." There are amendments to the Primary Contract, as relevant to this matter, referred to as the "Bridge Contract," which bears Contract Number 11-88286 A10. The Primary Contract, the Hyde Contract, and the Bridge Contract are together, the "Contracts."

34. The Contracts, which run concurrently and for a term of years, have been extended repeatedly over the years, and the Positive Healthcare special needs plan has operated without significant interruption for over 27 years.

## DHCS Refuses to Extend or Renew the Contract

35. Despite the unmatched success of the Positive Healthcare special needs plan, on June 30, 2022, DHCS informed AHF that "DHCS declines to exercise its exclusive option to extend the term of the Contract."[5]

36. DHCS' refusal to extend or amend the Contract inspired considerable concern and public debate among California citizens, including numerous public officials. One such citizen, the Hon. Sydney Kamlager, California State Senator for the 30th Senate District (covering portions of Los Angeles County), wrote to DHCS on August 29, 2022 on behalf of the California legislature's entire Los Angeles County delegation to ask various questions concerning DHCS' decision, one of

---

[5] As noted above, DHCS's refusal to extend or amend the Contract is subject to an ongoing administrative procedure and writ of mandamus proceeding, and the contractual invalidity of DHCS' actions in that regard are not at issue in this case.

AIDS HEALTHCARE FOUNDATION'S COMPLAINT

which concerned the conditions or circumstances under which DHCS decided not to extend or amend the Contract.

37.     DHCS responded to Senator Kamlager's question, among others, in a September 8, 2022 letter, signed by defendant Michelle Baass. DHCS confirmed that it refused to extend or amend the Contract because AHF engaged in speech with a presumed intent to inspire further speech, protest, or petitions to the government.

> However, last fall, AHF engaged in inappropriate negotiation tactics, including sending unapproved notices to their members without obtaining pre-approval of those notices from DHCS. The presumed intention of those notices was to make AHF members think that they would soon lose their care manager and services from AHF and cause members to contact DHCS in protest.

38.     DHCS appears to interpret the Contract to permit DHCS to retaliate against AHF for constitutionally protected speech, and to discourage constitutionally protected protests by Positive Healthcare members, concerning a matter of public importance, namely, the actions and conduct of government in the expenditure of taxpayer funds to treat people living with AIDS.

39.     DHCS expressly intended that its actions, and its interpretation and attempted "enforcement" of the Contracts in this matter, discourage or outright thwart AHF and Positive Healthcare members from exercising their constitutional rights to speech, to engage in protest, and to petition the government regarding the services the government provides to people living with AIDS. DHCS also expressly intended to punish and retaliate against, and did punish and retaliate against, AHF and Positive Healthcare members for their exercise (and even potential exercise) of constitutionally protected conduct by refusing to extend or amend the Contract thereby depriving Positive Healthcare members of uniquely successful treatment protocols and systems specifically developed for people living with AIDS.

40.   DHCS' actions violate AHF's and Positive Healthcare members' free speech/protest and petition rights under the First Amendment to the United States Constitution and Article I, Sections 2(a) and 3(a) of the California Constitution. AHF's conduct was absolutely protected, as was the activity of any Positive Healthcare members who chose to speak, petition, or protest.

## FIRST CLAIM

### Violation of United States Constitution, Amendment 1 – Free Speech

41.   AHF incorporates by this reference all the foregoing allegations as if set forth fully.

42.   The First Amendment provides that the government "shall make no law . . . abridging the freedom of speech." Governmental efforts to suppress speech based on opposition to the speaker's view are unconstitutional. At all times relevant hereto, the First Amendment gave to AHF and to Positive Healthcare members the right to speak concerning, discuss, make statements regarding, express opinions on, and engage in protest concerning matters of public concern and public policy, including the State's actions and decisions in the context of medical care for people living with AIDS at state and federal taxpayer expense, to enable members of society to make informed decisions about, among other things, the operation of their government and the role they wish to play in advocating for change.

43.   AHF's speech concerned important matters of public concern subject to robust public discussion and debate by Los Angeles County residents, among others.

44.   By basing its decision not to extend or amend the Contract on AHF's constitutionally protected expression (and on the possibility of constitutionally protected expression by Positive Healthcare members), DHCS violated the First Amendment.

45.    AHF and Positive Healthcare members will suffer irreparable harm, for which there is no adequate remedy at law, if DHCS' constitutional violations are not preliminarily and permanently enjoined.

## SECOND CLAIM

## Violation of United States Constitution, Amendment 1 – Right to Petition

46.    AHF incorporates by this reference all the foregoing allegations as if set forth fully.

47.    The First Amendment provides that the government "shall make no law . . . abridging the freedom of speech." "Speech" has long been held to include the rights to protest and petition the government for redress. Governmental efforts to suppress the right to protest or petition are unconstitutional.

48.    The subject matter of speech, protest and/or petition in this matter concerned important matters of public concern subject to robust public discussion and debate by Los Angeles County residents, among others.

49.    By basing its decision not to extend or amend the Contract on the presumption that AHF intended for its protected speech to inspire (or at least give reason for) protest or petitioning the government for redress by Positive Healthcare members, violated the First Amendment with an express intent to chill the exercise of the First Amendment protected rights to protest and to petition the government for redress.

50.    AHF and Positive Healthcare members will suffer irreparable harm, for which there is no adequate remedy at law, if DHCS' constitutional violations are not preliminarily and permanently enjoined.

## THIRD CLAIM

## Violation of United States Constitution, Amendment 1 – Retaliation

51.    AHF incorporates by this reference all the foregoing allegations as if set forth fully.

52.     The First Amendment provides that the government "shall make no law . . . abridging the freedom of speech." Governmental retaliation, including in the form of withholding public funds, based on an exercise, or threatened exercise, of rights of free speech, to protest, or to petition the government, has long been held to violate the First Amendment.

53.     The subject matter of speech, protest and/or petition in this matter concerned important matters of public concern subject to robust public discussion and debate by Los Angeles County residents, among others.

54.     By basing its decision not to extend or amend the Contract on the exercise and/or threatened exercise of rights protected by the First Amendment, DHCS retaliated against AHF and Positive Healthcare members for exercising (or threatening to exercise) those rights. DHCS, thereby, violated the First Amendment, harboring an express intent to chill the exercise of the First Amendment protected rights to protest and to petition the government for redress in the future.

55.     AHF and Positive Healthcare members will suffer irreparable harm, for which there is no adequate remedy at law, if DHCS' constitutional violations are not preliminarily and permanently enjoined.

## FOURTH CLAIM

## Violation of Article 1, Section 2(a) of the California Constitution – Free Speech

56.     AHF incorporates by this reference all the foregoing allegations as if set forth fully.

57.     Article 1, Section 2(a) of the California Constitution provides as follows:

> Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.

58.    The subject matter of speech, protest and/or petition in this matter concerned important matters of public concern subject to robust public discussion and debate by Los Angeles County residents, among others.

59.    By basing its decision not to extend or amend the Contract on AHF's Constitutionally protected expression (and on the possibility of Constitutionally protected expression by Positive Healthcare members), DHCS violated Article 1, Section 2(a) of the California Constitution.

60.    AHF and Positive Healthcare members will suffer irreparable harm, for which there is no adequate remedy at law, if DHCS' constitutional violations are not preliminarily and permanently enjoined.

## FIFTH CLAIM

### Violation of Article 1, Section 3(a) of the California Constitution, Amendment 1 – Right to Petition

61.    AHF incorporates by this reference all the foregoing allegations as if set forth fully.

62.    Article 1, Section 3(a) of the California Constitution provides as follows:

> The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good.

63.    AHF's speech concerned important matters of public concern subject to robust public discussion and debate by Los Angeles County residents, among others.

64.    By basing its decision not to extend or amend the Contract on the presumption that AHF intended for its protected speech to inspire (or at least give reason for) protest or petitioning the government for redress by Positive Healthcare members, DHCS violated Article 1, Section 3(a) of the California Constitution with an express intent to chill the exercise of the rights granted under Article 1, Section

3 of the California Constitution.

65.     AHF and Positive Healthcare members will suffer irreparable harm, for which there is no adequate remedy at law, if DHCS' constitutional violations are not preliminarily and permanently enjoined.

## SIXTH CLAIM

### Violation of Article 1, Section 2(a) and Section 3(a) of the California Constitution – Retaliation

66.     AHF incorporates by this reference all the foregoing allegations as if set forth fully.

67.     Article 1, Section 2(a) of the California Constitution provides as follows:

> Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.

68.     Article 1, Section 3(a) of the California Constitution provides as follows:

> The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good.

69.     .

70.     The subject matter of speech, protest and/or petition in this matter concerned important matters of public concern subject to robust public discussion and debate by Los Angeles County residents, among others.

71.     By basing its decision not to extend or amend the Contract on the exercise and/or threatened exercise of rights protected by Article 1, Sections 2(a) and 3(a) of the California Constitution, DHCS retaliated against AHF and Positive Healthcare members for exercising (or threatening to exercise) those rights. DHCS, thereby, violated Article 1, Sections 2(a) and 3(a) of the California Constitution, harboring an express intent to chill the exercise of rights protected under those

sections of the California Constitution.

72.    AHF and Positive Healthcare members will suffer irreparable harm, for which there is no adequate remedy at law, if DHCS' constitutional violations are not preliminarily and permanently enjoined.

## **PRAYER**

WHEREFORE, AHF prays as follows:

1.    For a declaratory judgment under 28 U.S.C. §2201(a) that:

    a.    DHCS violated the First Amendment to the United States Constitution ("First Amendment") by relying upon AHF's protected speech to decide not to extend or amend the Contract;

    b.    DHCS violated the First Amendment by retaliating against and punishing AHF based on its protected speech;

    c.    DHCS violated the First Amendment by retaliating against and punishing Positive Healthcare members based on AHF's protected speech;

    d.    DHCS violated the First Amendment by taking action to prevent and then punish Positive Healthcare members for the possibility that they will speak, protest, or petition the government for redress;

    e.    DHCS violated Article 1, Sections 2(a) and 3(a) of the California Constitution ("Article 1, Sections 2(a) and 3(a)") by relying upon AHF's protected speech to decide not to extend or amend the Contract;

    f.    DHCS violated Article 1, Sections 2(a) and 3(a) by retaliating against and punishing AHF based on its protected speech;

g.  DHCS violated Article 1, Sections 2(a) and 3(a) by retaliating against and punishing Positive Healthcare members based on AHF's protected speech;

h.  DHCS violated Article 1, Sections 2(a) and 3(a) by taking action to prevent and then punish Positive Healthcare members for the possibility that they will speak, protest, or petition the government for redress;

2.  For preliminary and permanent injunctive relief enjoining DHCS from:

a.  violating the First Amendment by relying upon AHF's protected speech to decide not to extend or amend the Contract;

b.  violating the First Amendment to the United States Constitution by retaliating against and punishing AHF based on its protected speech;

c.  violating the First Amendment by retaliating against and punishing Positive Healthcare members based on AHF's protected speech;

d.  violating the First Amendment by taking action to prevent and then punish Positive Healthcare members for the possibility that they will speak, protest, or petition the government for redress;

e.  violating Article 1, Sections 2(a) and 3(a) by relying upon AHF's protected speech to decide not to extend or amend the Contract;

f.  violating Article 1, Sections 2(a) and 3(a) by retaliating against and punishing AHF based on its protected speech;

g.  violating Article 1, Sections 2(a) and 3(a) by retaliating against and punishing Positive Healthcare members based on AHF's

AIDS HEALTHCARE FOUNDATION'S COMPLAINT

protected speech;

      h.    violating Article 1, Sections 2(a) and 3(a) by taking action to prevent and then punish Positive Healthcare members for the possibility that they will speak, protest, or petition the government for redress;

3.    For reasonable attorneys' fees;

4.    For AHF's costs herein; and

5.    For such further and other relief as this Court deems just and proper.

DATE: September 15, 2022

AIDS HEALTHCARE FOUNDATION
Tom Myers

KIM RILEY LAW
Andrew F. Kim
Rebecca J. Riley

By: _____

ANDREW F. KIM
Attorneys for Plaintiff
AIDS HEALTHCARE FOUNDATION

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial for all issues so triable.

DATE: September 15, 2022

AIDS HEALTHCARE FOUNDATION
Tom Myers

KIM RILEY LAW
Andrew F. Kim
Rebecca J. Riley

By: _____
ANDREW F. KIM
Attorneys for Plaintiff
AIDS HEALTHCARE FOUNDATION

AIDS HEALTHCARE FOUNDATION'S COMPLAINT