O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIDS HEALTHCARE FOUNDATION D/B/A/ PHC CALIFORNIA,<br><br>       Plaintiff,<br><br>           v.<br><br>CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES AND MICHELLE BAASS, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES,<br><br>       Defendants. | Case No.:  2:22-cv-06636 MEMF-Ex<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS [ECF NO. 24] AND GRANTING REQUEST FOR JUDICIAL NOTICE [ECF NO. 24-2]** |

Before the Court are the Motion to Dismiss and Request for Judicial Notice filed by Defendants California Department of Health Care Services and Michelle Baass, Director of the California Department of Health Care Services. ECF Nos. 24, 24-2. For the reasons stated herein, the Court hereby GRANTS IN PART the Motion to Dismiss and GRANTS the Request for Judicial Notice.

/ / /

/ / /

## INTRODUCTION

Plaintiff AIDS Healthcare Foundation ("AHF") is a California non-profit organization headquartered in Los Angeles County which serves as the world's largest provider of health care services to people living with HIV and/or AIDS.[1] Compl. ¶ 8. Defendant Department of Health Care Services ("DHCS") is the state governmental agency that oversees California's federal Medicaid program ("Medi-Cal"). *Id.* ¶ 11. Defendant Michelle Baass is the Department's Director. *Id.*[2]

This case concerns whether DHCS and Baass violated the constitutional rights of the AIDS Healthcare Foundation by declining to extend AHF's contract with DHCS on the basis of a letter that AHF sent to enrollees in its healthcare plan. The issue before the Court is whether AHF has adequately *alleged* its constitutional claims. The Court assumes for purposes of this motion that everything AHF has *alleged* in its Complaint is true. As a result of this Court's Order, the question of whether everything AHF has alleged is *actually* true will be answered at a later stage of the litigation.

In short, AHF's claims that Director Baass violated AHF's federal constitutional rights survive for now. First, AHF properly *alleged* in its Complaint that Director Baass was acting in her official capacity when she declined to extend AHF's contract; therefore, the Eleventh Amendment does not bar the claims. Second, AHF has properly *alleged* that it was speaking on a matter of public concern when it sent its letter, that it was acting in its private capacity when it sent its letter, and that the Department's declining to extend the contract *because* AHF failed to seek preapproval of the letter was not constitutionally permissible.

/ / /

/ / /

---

[1] These facts are taken from the Complaint and appear to be largely undisputed. *See generally* Compl. Human Immunodeficiency Virus ("HIV") is a virus that can cause Acquired Immunodeficiency Syndrome ("AIDS"), other life-threatening complications, and death. ECF No. 14-2 ("Declaration of Michael Weinstein") ¶¶ 13, 14; ECF No. 14-3 ("Declaration of Donna Stidham") ¶¶ 13, 14; ECF No. 14-4 ("Declaration of Michael B. Wohlfeiler") ¶ 8.

[2] Collectively, Defendants DHCS and Baass will be referred to hereinafter as the "DHCS Defendants."

**BACKGROUND**

**I.      Factual Background[3]**

### A. Overview of Medi-Cal and the Department's Administration of Medi-Cal Benefits

In 1965, "Congress created the Medicaid program [which] authorizes federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Pharm. Research and Mfrs. of Am v. Wash*, 538 U.S. 644, 650–51 (2003); *see also* 42 U.S.C. §1369a. "The federal Medicaid program is administered in California by DHCS as the California Medical Assistance Program, also known as 'Medi-Cal' in accordance with [the California] Welfare and Institutions Code section 14000 *et seq*." Declaration of Rafael Davtian ¶ 2. Approximately thirteen million Medi-Cal beneficiaries are enrolled in a Medi-Cal managed care plan ("MCP"). *Id.* ¶ 3. "MCPs provide services to Medi-Cal beneficiaries through at-risk contracts entered into with the State." *Id.*

As part of its administration, the Department contracts with MCPs to provide covered Medi-Cal services to enrolled members within a county or region, "in exchange for an actuarially certified, per-member monthly capitation payment." Declaration of Michelle Retke ¶ 2. The Department oversees MCPs in accordance with federal and state Medicaid law. *Id.* "Each MCP contracts with its own provider networks and organized systems of care to provide services to its enrolled members." *Id.* Coverage provides "payment of health care services covered under the federal Medicaid program, the state Medi-Cal program, and additional services covered pursuant to the MCP contract." *Id.*

---

[3] Because this section merely summarizes the background against which this dispute exists, and is largely undisputed, the facts therein are taken not only from AHF's Complaint, but also other evidence and declarations submitted by either party on the docket. *See* ECF No. 1 ("Complaint" or "Compl."); Declaration of Michael Weinstein; Declaration of Donna Stidham; Declaration of Michael B. Wohlfeiler; ECF Nos 14-5, 14-6 ("Declaration of Andrew F. Kim in support of Plaintiff's Request for Judicial Notice" or "Pl.'s RFJN"); ECF No. 19-1 ("Declaration of Rafael Davtian"); ECF No. 19-2 ("Declaration of Michelle Retke"); ECF No. 20 ("Defendant's Request for Judicial Notice" or "Def.'s RFJN"); ECF No. 22 ("Plaintiff's Supplemental Request for Judicial Notice" or "Pl.'s Supp, RFJN"), Ex. 9.  Unless otherwise indicated, the following facts appear to be undisputed.

**B.  AHF's Positive Healthcare Special Needs Plan**

AHF is a non-profit organization that originally started with "the mission to provide Los Angeles residents afflicted with AIDS a place and means to die with dignity." Declaration of Michael Weinstein ¶ 3. AHF's mission progressed over time, and now it seeks to "provide cutting edge medical care to people living with HIV/AIDS regardless of their ability to pay with the goals of saving the lives of as many people living with HIV/AIDS as possible and ending the HIV/AIDS epidemic." *Id.* ¶ 4. In "furtherance of this mission, AHF provides medical care" and services to "more than 1.6 million patients in 45 countries" across the world. *Id.*

AHF is under a managed care contract, through which the Department contracts with AHF to provide health care benefits and services to Medi-Cal beneficiaries with AIDS under AHF's Positive Healthcare ("PHC") Special Needs Plan.[4]  *Id.* ¶ 5; Declaration of Michael Weinstein ¶ 6. Through the PHC Special Needs Plan, AHF furnishes healthcare benefits and services to those enrolled in the plan ("enrollees"), all who have been diagnosed with AIDS, in exchange for "an actuarially certified, per-member monthly capitation payment" from the Department. Declaration of Michael Weinstein ¶ 6; Declaration of Michelle Retke ¶ 5. Around September and October of 2022, AHF had approximately 800–811 PHC enrollees in its PHC Special Needs Plan. Declaration of Michael Weinstein ¶ 9; Declaration of Donna Stidham ¶ 9; Declaration of Michelle Retke ¶ 5.

AHF's PHC Special Needs Plan's specialized services and benefits include access "to a team of healthcare professionals—specialized Registered Nurse care managers, expert HIV primary care physicians, Registered Nurses, licenses practical nurses, mental health professionals, social workers, and others[.]" Declaration of Michael Weinstein ¶ 15; Declaration of Donna Stidham ¶ 15; Declaration of Michael B. Wohlfeiler ¶ 8. The PHC Special Needs Plan also focuses on strictly scheduled drug regimens, including anti-retroviral drugs, and the interactions between enrollees and "PHC expert service providers" to ensure each enrollee receives the information and care necessary. Declaration of Michael Weinstein ¶ 15; Declaration of Donna Stidham ¶ 15; Declaration of Michael B. Wohlfeiler ¶ 6. Most importantly to AHF, the PHC Special Needs care model assigns a

---

[4] Also referred to as "PHC California." *See* Declaration of Michelle Retke ¶ 10, Ex. 2; Pl.'s RFJN, Ex. 7

professional Registered Nurse care manager to every enrollee. Declaration of Michael Weinstein ¶¶ 12, 19.  Each assigned Nurse care manager "carefully monitors the care plan established by each [enrollee's] primary care physician, answers healthcare questions" and "develops an integrated care plan," among other things, for enrollees. Declaration of Michael Weinstein ¶ 19; Declaration of Donna Stidham ¶ 20. No other Medi-Cal based program in Los Angeles County provides a similar Registered Nurse care manager for all its enrollees living with AIDS. Declaration of Michael Weinstein ¶ 19.

## II.   **Factual Allegations[5]**

Over the decades, the PHC contract between AHF and DHCS has been changed and amended a number of times, primarily expanding the scope and range of medical care AHF provides. Compl. ¶ 32. Originally, the PHC contract did not cover al care. *Id.* This changed over time until, on January 1, 2019, PHC became a "fully capitated" program, meaning it was responsible for the entirety of patient care benefits and services. *Id.*

Several contracts between AHF and DHCS have governed the Positive Healthcare special needs plan. *Id.* ¶ 33. At all relevant times, there have been two primary contracts – Contract Number 11-88286, which is referred to as the "Primary Contract," and Contract Number 20-10355, which is referred to as the "Hyde Contract." *Id.* There are amendments to the Primary Contract, as relevant to this matter, referred to as the "Bridge Contract," which bears Contract Number 1188286 A10. *Id.*[6] These Contracts, which run concurrently and for a term of years, have been extended repeatedly over the years, and the PHC special needs plan has operated without significant interruption for over 27 years. *Id.* ¶ 34.

On November 12, 2021, AHF sent out a letter to PHC enrollees, stating the following:

Dear Member:

AIDS Healthcare Foundation (AHF) is always here to serve your healthcare needs under all circumstances. We are writing to tell you that PHC California, the Medi-Cal health plan which is operated by AHF, ***may*** sunset on December 31, 2021**. If this letter**

---

[5] Unless otherwise indicated, the following description of the factual allegations is derived from the Complaint. *See generally* Compl.

[6] The Court will refer to the agreements collectively as the "Contract" or "Contracts."

**causes you any confusion, please call us right away at 1-800-263-0067 (TTY users call 711).**

We want to assure you that AHF will continue trying to work with the California Department of Health Care Services (DHCS) towards a solution for PHC California members so you can continue to see your doctor and enjoy the benefits that the health plan offers you now. But if PHC California does end, you may receive a letter from DHCS telling you that PHC California will no longer be available to Medi-Cal beneficiaries and current PHC California members after December 31, 2021. The letter will also explain that you will have to choose how you will receive your healthcare after December 31. In the letter, DHCS may limit your choices to other Medi-Cal managed care plans.

We suggest that you remain in PHC California until December 31, 2021. If PHC California ends, you can choose LA Care or HealthNet for your healthcare starting January 1, 2022. With those plans, you can continue to see your AHF Healthcare Center doctor. However, you will lose your Registered Nurse Care Team Manager and the Health and Wellness benefit, because these benefits are available only through PHC California.

Twenty-seven years ago, AHF started the then-called Positive Healthcare plan, with the sole purpose of improving the quality of Medi-Cal beneficiaries' healthcare and giving them better access to the doctors they need to see. PHC California works to keep its members as healthy as possible by assigning each member a Registered Nurse Care Team Manager who helps coordinate care. PHC California also offers members a health and wellness benefit such as a no-cost gym membership or over-the-counter pharmacy products. These benefits are not available through other Medi-Cal managed care plans or Regular Medi-Cal (fee-for-service).

In recent years, in spite of AHF's best efforts, DHCS has been unable to offer AHF rates that are enough to cover the healthcare costs of PHC California members. The rate is less than what PHC California pays to doctors and providers for the healthcare you receive. In other words, DHCS expects AHF to cover a substantial part of your healthcare out of its own pocket. AHF is a non-profit organization and cannot afford to privately fund the healthcare of PHC California members.

The operation of PHC California is under a contract between DHCS and AHF. That contract is set to expire on December 31, 2021. Unless DHCS acts quickly before the end of the year, AHF will not be able to renew this contract and PHC California will shut down after 27 years of operation.

We want to assure you that we remain committed to finding a solution with DHCS. We also know that the state of California has experienced several years of continuous budget surpluses, with another surplus protected for 2022. To us, it is unthinkable that in spite of these surpluses, DHCS would not be able to timely accommodate PHC California's best efforts for basic financial survival. DHCS's inability to increase our rates effectively cuts into our members' healthcare services today. And we truly believe that this will add to California's long-term healthcare costs, because studies have shown time and again that those who have less access to healthcare now tend to get sicker and need more and expensive care later.

6

If you would like to let DHCS know how you feel about its decision not to adequately fund PHC California, you can call the DHCS Office of the Ombudsman at **1-888-452-8609** or email **mmcdombudsmanoffice@dhcs.ca.gov**. You can also call or write to the DHCS Director:

> Call:  1-800-541-5555
> Write:  Michelle Baass, Director
>          California Department of Health Care Services
>          P.O. Box 997413, MS 0000
>          Sacramento, CA 95899-7413

Pl's RFJN, Ex. 7 (Nov. 2021 Letter).[7]

On June 30, 2022, DHCS informed AHF that "DHCS declines to exercise its exclusive option to extend the term of the Contract." *Id.* ¶ 35. The Hon. Sydney Kamlager, California State Senator for the 30th Senate District (covering portions of Los Angeles County), wrote to DHCS on August 29, 2022, on behalf of the California legislature's entire Los Angeles County delegation to ask various questions concerning DHCS' decision, one of which concerned the conditions or circumstances under which DHCS decided not to extend or amend the Contract. *Id.* ¶ 36.

DHCS responded to Senator Kamlager's question, among others, in a September 8, 2022, letter, signed by defendant Michelle Baass. *Id.* ¶ 37. DHCS confirmed that it refused to extend or amend the Contract because AHF engaged in speech with a presumed intent to inspire further speech, protest, or petitions to the government:

> However, last fall, AHF engaged in inappropriate negotiation tactics, including sending unapproved notices to their members without obtaining pre-approval of those notices from DHCS. The presumed intention of those notices was to make AHF members think that they would soon lose their care manager and services from AHF and cause members to contact DHCS in protest.

*Id.*

## III.   **Procedural History**

### A.  **District Court Proceedings**

On September 16, 2022, AHF filed a Complaint in this Court against the Department and Defendant Baass, asserting six causes of action: (1) Violation of United States Constitution,

---

[7] The Complaint references the Nov. 2021 Letter and the Court previously took judicial notice of the letter, printing its contents in full in the PI Order. ECF No. 28 ("PI Order"), at 5–7.

Amendment I—Free Speech; (2) Violation of United States Constitution, Amendment I—Right to Petition; (3) Violation of United States Constitution, Amendment I—Retaliation; (4) Violation of Article 1, Sections 2(a) of the California Constitution—Free Speech; (5) Violation of Article 1, Sections 3(a) of the California Constitution—Right to Petition; (6) Violation of Article 1, Sections 2(a) and 3(a) of the California Constitution—Retaliation. *See generally* Compl.

On October 4, 2022, AHF filed a Motion for Preliminary Injunction, seeking an order "prohibiting and forbidding Defendant[s] from terminating, or refusing to amend or extend, the PHC Special Needs Plan based on the exercise by AHF and/or PHC Enrollees of constitutionally protected rights." ECF No. 14 ("PI Motion"), at 1–2, 20. A hearing on the PI Motion was held on November 10, 2022. ECF No. 25. On November 28, 2022, the Court issued an Order granting the PI Motion and holding that

> The Department, and its representatives, agents, and employees, and all those acting on its behalf, in concert with it, or at its direction, are preliminarily enjoined and restrained for the pendency of this action from relying on AHF's Nov. 2021 Letter in terminating, or refusing to extend or amend, the PHC Special Needs Plan for operation starting January 1, 2023.

PI Order, at 41. On November 14, 2022, the DHCS Defendants filed the instant Motion to Dismiss and Request for Judicial Notice. ECF Nos. 24 ("Motion" or "MTD"), 24-2 ("RJN"). The Motion was fully briefed on December 29, 2022. *See* ECF Nos. 29 ("Opp'n"), 35 ("Reply"). The Court held oral argument on the matter on March 30, 2023.

## B. Administrative Proceedings

On July 8, 2022, AHF filed a Notice of Dispute challenging the Department's decision to let the Contract expire. Declaration of Michelle Retke ¶ 23, Ex. 6. The Department denied AHF's claims and AHF appealed this decision to the Department's Office of Administrative Hearings and Appeals. *Id., see also id.*, Ex. 7. Michelle Retke, as the Contracting Officer, issued a decision stating that "DHCS's contractual dispute process is not the proper forum to decide questions of constitutionality." ECF No. 27 ("Pl.'s Notice and Update of Developments in Plaintiff's State Court

Action and Underlying Administrative Proceeding"), Ex. 1 at 2. At the hearing before this Court, AHF's counsel explained that the appeal has been dismissed.[8]

In addition to filing an appeal with the Department, AHF has also filed a Petition for Writ of Mandate in the Sacramento County Superior Court. Def.'s RFJN Ex. D. In this proceeding, AHF raises issues arising under the Contract and seeks a peremptory writ of administrative mandamus and preliminary and injunctive relief enjoining the Department from terminating "the Contracts or otherwise allowing them to lapse[.]" *Id.* at 17. On November 16, 2022, the Sacramento County Superior Court denied AHF's Ex Parte Application for Stay of Administrative Decision. ECF No. 26 ("Def.'s Notice and Update of Developments in Plaintiff's State Court Action"), Ex. 1.

## REQUEST FOR JUDICIAL NOTICE AND CONSIDERATION OF EXTRINSIC EVIDENCE

### I.    Applicable Law

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Under this standard, courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Moreover, even when documents are not physically attached to the complaint, courts may nonetheless consider such documents if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011); *Lee*, 250 F.3d at 688.

/ / /

/ / /

---

[8] Counsel for the Department explained to this Court at the hearing on this matter that in view of the Court's order on the Preliminary Injunction, the Department elected to extend the contract to the end of 2023. Counsel for AHF explained that, as a result, the Department took the position that the administrative appeal was therefore moot. On that basis, AHF dismissed the appeal.

**II.**    **Discussion**

The DHCS Defendants submit—and ask the Court to take judicial notice of—five (5) exhibits in support of its Motion to Dismiss:

1. The original "Primary Contract" (No. 11-88286) between the parties (Exhibit 1);

2. The Sixth Amendment to the Primary Contract (No. 11-88286 (A06)) (Exhibit 2);

3. The Bridge Amendment to the Primary Contract (No. 11-88286 (A10)) (Exhibit 3);

4. Request for Formal Administrative Hearing, dated September 1, 2022 (Exhibit 4);

5. Petition for Writ of Mandate filed in Sacramento County Superior Court Case No. 34-2022-80004011, dated September 16, 2022 (Exhibit 5).

RJN at 2.

With respect to Exhibits 1–3, the Court finds that these exhibits fall within the category of documents referenced in the complaint and central to the plaintiff's claim. *Corinthian Colleges*, 655 F.3d at 999. With respect to Exhibit 4, the Court finds that this exhibit falls within the category of public records of administrative bodies widely recognized as proper subjects of judicial notice. *See, e.g.*, *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and 'reports of administrative bodies.'" (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954))). Lastly, the Court finds that Exhibit 5 falls within the category of filings in state court related to the matter before this Court. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (noting that a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings); *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n.1 (9th Cir. 1996) (court may take judicial notice of pleadings and court orders in related proceedings).

The Court therefore GRANTS the Request for Judicial Notice as to Exhibits 1–5.

/ / /

/ / /

**MOTION TO DISMISS**

**I.     Applicable Law**

    **A.  Motions to Dismiss for Lack of Subject Matter Jurisdiction Under Federal Rule of Civil Procedure 12(b)(1)**

Under Federal Rule of Civil Procedure Rule 12(b)(1), dismissal is proper when a plaintiff fails to properly plead subject matter in the complaint. FED. R. CIV. P. 12(b)(1). A jurisdictional attack may be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Ninth Circuit has described the difference between these two approaches:

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

*Id.* When the motion attacks the complaint on its face, the court considers the complaint's allegations to be true, and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

    **B.  Motions to Dismiss for Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure Rule 12(b)(6), a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The purpose of Rule 12(b)(6) is to "enable defendants to challenge the legal sufficiency of claims asserted in a complaint." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court may properly dismiss a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts to support a cognizable legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

acted unlawfully." *Id.* While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than "threadbare recitals of the elements of a cause of action." *Id.* "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."). This tenet, however, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

A district court should generally grant leave to amend freely. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). However, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Id.* at 1041.

## C. The First Amendment

"The First Amendment shields public employees from employment retaliation for their protected speech activities." *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012) (internal quotations and citations omitted). Because "independent government contractors are similar in most relevant respects to government employees," the United States Supreme Court extended similar First Amendment protections afforded to government employees to government contractors. *See Bd. of Cnty. Com'rs v. Umbehr*, 518 U.S. 668, 684–85 (1996); *see also Riley's Am. Heritage Farms v. Elsasser*, 32 F. 4th 707, 722 (9th Cir. 2022) (treating school district's long-standing relationship with plaintiffs to provide educational services to students analogous to relationship between government and government contractor for First Amendment retaliation claim); *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2004) (recognizing "[w]hen a business

vendor operates under a contract with a public agency, [the Court] analyzes its First Amendment retaliation claim . . . using the same basic approach that [the Court] would use if the claim had been raised by an employee of the agency").

> To state a claim for First Amendment retaliation, a contractor must establish
>
> (1) it engaged in expressive conduct that addressed a matter of public concern; (2) the government officials took an adverse action against it; and (3) its expressive conduct was a substantial or motivating factor for the adverse action.

*Alpha Energy Savers, Inc.*, 381 F.3d at 923 (citation omitted). "This final element of the prima facie case requires plaintiff to show causation and the defendant's intent. . . . Where, as here, a plaintiff alleges First Amendment retaliation, the plaintiff must show that the government defendant 'acted with a retaliatory motive.'" *Elsasser*, 32 F.4th at 721 (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)). If the contractor meets this burden, the state actor "can nonetheless escape liability if [it] demonstrate[s] either that: (a) under the balancing test established by *Pickering v. Bd. of Educ.*, [391 U.S. 563 (1968)], legitimate administrative interests in promoting efficient service-delivery and avoiding workplace disruption outweigh the contractor's free speech interests"; or "(b) under a mixed motives analysis established by *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, [429 U.S. 274, 287 (1977)], they would have taken the same actions in the absence of the contractor's expressive conduct." *Id.* (citing to *Umbehr*, 518 U.S. at 675–76).

## II.   **Discussion**

The DHCS Defendants contend that the Motion to Dismiss should be granted because (1) AHF's claims are barred under the Eleventh Amendment, (2) AHF's claims brought on behalf of its plan members fail for lack of third-party standing, (3) AHF has failed to exhaust administrative remedies, and (4) AHF's constitutional claims fail on their merits. MTD at 6–25. AHF states that it does not oppose the Court granting the Motion to Dismiss the Department as a defendant and the Motion to Dismiss AHF's Fourth, Fifth, and Sixth claims. Opp'n at 1–4. The Court will therefore GRANT the Motion on these grounds. Moreover, AHF confirms—as it did at the hearing on the Motion for Preliminary Injunction—that it is proceeding as the sole plaintiff and does not seek to vindicate in this action the rights of PHC Enrollees. Opp'n at 4–5; PI Order at 14 n.4. As a result, the

Court need not address the DHCS Defendants' second line of argument regarding third-party standing.

Therefore, the only claims remaining that require decision are AHF's First, Second, and Third Claims with respect to the Director only. With respect to these claims, AHF contends that (1) the Court has jurisdiction over a claim against Baass, in her official capacity, and therefore should not dismiss claims against her, (2) AHF should not be required to exhaust any alleged contractual administrative remedy, and (3) AHF has sufficiently stated claims for violation of its right to free speech. *Id.* at 4–19.

### A. AHF's claims against Baass are not barred under the Eleventh Amendment.

The DHCS Defendants contend that AHF's entire suit—including its claims against Director Baass—is barred by the Eleventh Amendment because AHF has failed to allege that Baass was acting in her official capacity. MTD at 6–7. AHF argues that it has sufficiently alleged that Baass, as Director of the Department, took specific actions to violate AHF's constitutional rights. Opp'n at 4. The Eleventh Amendment prohibits federal courts from hearing suits brought by private citizens against state governments without the state's consent. *Nat. Res. Def. Council v. Cal. Dept. of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996). However, the Supreme Court has recognized an exception to this general rule. *Id.* at 422 (citing *Ex parte Young*, 209 U.S. 123 (1908)). Under the *Ex parte Young* doctrine, "an action by a state officer that violates federal law is not considered an action of the state and, therefore, is not shielded from suit by the state's sovereign immunity." *Id.* As a result, a plaintiff may bring suit in federal court against a state officer accused of violating federal law. *Id.*

The Complaint itself identifies Baass as "the Director of DHCS," which it notes is "a governmental agency of the State of California." Compl. ¶ 11. The Complaint further alleges that Baass signed the September 8, 2022 letter to Senator Kamlager "confirm[ing] that [the Department] refused to extend or amend the Contract" due to "inappropriate negotiation tactics, including sending unapproved notices to their members without obtaining pre-approval of those notices from DHCS." *Id.* ¶ 37. The Court finds that AHF's claims against Baass fall squarely within the exception carved out of the Eleventh Amendment by *Ex Parte Young*, as they involve claims against a state officer, in

her official capacity, regarding violations of federal law.[9] The Court therefore DECLINES to grant the Motion on this ground.

**B. AHF need not exhaust its administrative remedies.**

The DHCS Defendants contend that AHF's claims must be dismissed because (1) AHF must exhaust its contractual administrative remedies, and alternatively, (2) even if the contracts do not require exhaustion, the Court should nonetheless require AHF to exhaust its administrative remedies.[10] MTD at 8–14. AHF contends that it need not exhaust its administrative remedies. Opp'n at 8–12.

    i.   <u>The Primary Contract does not require AHF to exhaust its administrative remedies.</u>

The DHCS Defendants argue that under the Primary Contract, AHF must exhaust its administrative remedies before pursuing this action in court. MTD at 8–12. Parties to a contract may agree to require exhaustion of contractual administrative or other dispute resolution remedies before seeking relief in court. *See AIDS Healthcare Found. v. State Dept. of Health Care Servs.*, 194 Cal. Rptr. 3d 425, 429 (Ct. App. 2015) (enforcing administrative exhaustion requirements in contract between AHF and state department). The Primary Contract provides that the "Disputes section will be used by the Contract as the means for seeking resolution of disputes *on contractual issues*." RJN Ex. 2, Prov. 19 (emphasis added).

Although disputes exist between the parties that are related to the Contract, the underlying inquiry in this action is ultimately whether the Department's conduct violated AHF's constitutional

---

[9] The DHCS Defendants contend that AHF's claims against Baass should be dismissed because although "AHF has *sued* Director Baass in her official capacity, . . . [it] has neglected to *allege* that Director Baass was acting in her official capacity." Reply at 2. In support of their contention that "a plaintiff relying on *Ex Parte Young* must specifically allege that the subject state official acted in their official capacity," the DHCS Defendants cite, as an example, *Natural Resources Defense Council v. California Department of Transportation*. *Id.* (citing 96 F.3d at 421–22). However, the Court finds no support in that case for this purported requirement that the allegation be explicitly stated in the complaint for the doctrine to apply. It is clear from AHF's allegations that AHF is bringing its lawsuit against Baass due to actions taken while she was acting in her official capacity as Director of DHCS.

[10] It appears that the Department may have abandoned this argument when it determined that the pending administrative appeal was moot and AHF dismissed the appeal on that basis. *See supra* note 8. For the sake of completeness, however, the Court addresses it here.

rights. Taking the allegations in the Complaint as true, and drawing all reasonable inferences in favor of AHF, as it must on a Motion to Dismiss, the Court must accept, for the purposes on this Motion, that DHCS based its decision not to extend or amend the Contract on AHF's lawful speech. Moreover, regardless of whether AHF breached the Contract, questions would remain as to whether AHF's Nov. 2021 Letter was constitutionally protected speech and, if so, whether the Department's interests in enforcing the Contract terms outweigh AHF's protected speech interest. *See Board of County Com'rs, Wabaunsee County, Kan. V. Umbehr*, 518 U.S. 668, 685 (1996). These inquiries are constitutional and not contractual. The Court therefore finds that the Contract does not require exhaustion of AHF's claims.

        ii.   <u>The Court declines to require AHF to exhaust its administrative remedies "as a prudential matter."</u>

The DHCS Defendants argue, in the alternative, that even if the parties' contracts do not require exhaustion, the Court should nonetheless require AHF to exhaust its administrative remedies "as a prudential matter," under the "judicial created doctrine of exhaustion." MTD at 12–14. Courts under this doctrine

> may still require exhaustion if: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*United States v. Cal. Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (applying factors to a health care dispute). However, the Court Concludes that these factors do not weigh in favor of requiring exhaustion here.

First, the agency's expertise in the unique customs and practices of Medi-Cal managed care plans, and the experience the OAHA possesses in dealing with Medi-Cal health plan disputes," MTD at 13, would have little relevance in determining whether the Department violated AHF's constitutional speech rights.

Second, relaxation of the requirement would not encourage deliberate bypass of the administrative scheme because the issues presented are specific to AHF (*i.e.*, whether AHF's Nov.

2021 Letter was protected speech and whether the Department's reliance on this letter in declining to extend the Contract violated AHF's constitutional rights). In *California Care Corp.*, the providers seeking relief in the district court had for three years "abused" the agency's appeal procedures to "avoid or delay any proper repayment of their Medicare advances." *Id.* at 1248. There is no evidence of similar abuse here—the Department informed AHF of its decision not to extend the Contract in June of 2022. AHF promptly filed its initial claim with the Department on July 8, 2022, challenging the Department's decision, and that claim was denied. Declaration of Michelle Retke ¶ 23, Exs. 6, 7. AHF appealed, and its administrative appeal is currently pending. Def.'s RFJN Ex. B (setting a November 30 hearing date); Pl.'s Supp. RFJN, Ex. 9 (vacating the November 30 hearing date because of the need to resolve a discovery dispute).AHF has also filed a Writ of Mandate with the California Superior Court, seeking a similar injunction but for reasons relevant to the contractual dispute between the parties. Def.'s RFJN Ex. D.

Lastly, the Court finds that the third factor does not weigh in favor of requiring exhaustion. Generally, the third factor tends to weigh in favor of requiring exhaustion. After all, the result of the administrative proceedings could "allow the agency to correct its own mistakes," which would avoid the need for this Court to address the Constitutional issues raised in the instant suit. *Montana Chapter of Ass'n of Civilian Technicians, Inc. v. Young*, 514 F.2d 1165, 1167–68 (9th Cir. 1975) ("The necessity of deciding the constitutional issues may well be avoided by the grant of alternative administrative relief."). However, Courts have declined to require exhaustion where resort to the agency would be futile. *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 747 (9th Cir. 1991). "[W]here the agency's position on the question at issue 'appears already set,' and it is 'very likely' what the results of recourse to administrative remedies would be, such recourse would be futile and is not required." *Id.* Despite AHF's contentions that the Department's decision not to extend their Contract violated their First Amendment rights, and even after public debate among California citizens, including public officials, the Department reiterated its policy and stood by its decision not to extend the Contract. Taking the allegations of the Complaint as true, the Court finds that resort to the agency would be futile at this time. Moreover, the Contract

has now been extended to December 31, 2023, and the administrative appeal has been dismissed.[11] Should the Court require AHF to exhaust its administrative remedies and grant the Motion to Dismiss, AHF would be left without the remedy it seeks during the pendency of any administrative appeal it might bring. The Court therefore declines to require AHF to exhaust its administrative remedies.

For these reasons, the Court DECLINES to grant the Motion on this ground.

### C. AHF adequately states a claim for violation of its federal constitutional rights to free speech.

The DHCS Defendants contend that AHF's complaint fails to state a claim for violation of its federal and state constitutional rights to free speech because (1) AHF's speech was not on a matter of public concern, (2) AHF's speech was sent in its official, not private, capacity, and (3) the Department's decision to forego extending the contracts is constitutionally permissible and justified by AHF's material breaches of contract and its refusal to cure those breaches. MTD at 12–25. AHF contends that it has sufficiently stated claims for violation of its federal constitutional right to free speech. Opp'n at 12–18. As discussed previously, to state a claim for First Amendment retaliation, a contractor must establish

> (1) it engaged in expressive conduct that addressed a matter of public concern; (2) the government officials took an adverse action against it; and (3) its expressive conduct was a substantial or motivating factor for the adverse action.

*Alpha Energy Savers, Inc.*, 381 F.3d at 923 (citation omitted). If the contractor meets this burden, the state actor "can nonetheless escape liability if [it] demonstrate[s] either that: (a) under the balancing test established by *Pickering v. Bd. of Educ.*, [391 U.S. 563], legitimate administrative interests in promoting efficient service-delivery and avoiding workplace disruption outweigh the contractor's free speech interests"; or "(b) under a mixed motives analysis established by *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, [429 U.S. at 287], they would have taken the same actions in the absence of the contractor's expressive conduct." *Id.* (citing to *Umbehr*, 518 U.S. at 675–76).

---

[11] *See supra* note 8.

i.   <u>AHF has sufficiently alleged that its speech addressed a matter of public concern.</u>

The DHCS Defendants contend that (1) AHF has not alleged that the Department knew of the actual substance of its communication to members and, thus, the speech's purported connection to a public concern, at the time the Department allowed the contracts to expire, and (2) AHF's Nov. 2021 Letter did not address a matter of public concern because AHF sent the letter in the context of contract negotiations concerning its demand for higher reimbursement rates. MTD at 16–18.

"[S]peech involves a matter of public concern when it fairly can be said to relate to 'any matter of political, social, or other concern to the community.'" *Gibson v. Off. of Atty. Gen.*, 561 F.3d 920, 925 (9th Cir. 2009) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Whether the contractor's speech addresses a matter of public concern looks at the "content, form, and context of a given statement, as revealed by the record as a whole." *Connick*, 461 U.S. at 147–48. "Speech that concerns issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government merits the highest degree of first amendment protection." *Alpha Energy Savers, Inc.*, 381 F.3d at 924 (internal quotations and citation omitted). "In contrast, speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of government agencies, is generally not public concern." *Id.* (internal quotations omitted).

With respect to the DHCS Defendants' first line of argument, AHF need not set forth the contents of that letter, verbatim, in its complaint for its First Amendment claim to survive. The Court finds that AHF sufficiently alleged that Baass stated in her September 8, 2022 letter to Senator Kamlager that she relied on AHF's speech in its Nov. 2021 letter in terminating and refusing to extend the Contract. AHF's Complaint alleges, in relevant part:

> 36. DHCS' refusal to extend or amend the Contract inspired considerable concern and public debate among California citizens, including numerous public officials. One such citizen, the Hon. Sydney Kamlager, California State Senator for the 30th Senate District (covering portions of Los Angeles County), wrote to DHCS on August 29, 2022 on behalf of the California legislature's entire Los Angeles County delegation to ask various questions concerning DHCS' decision, one of which concerned the conditions or circumstances under which DHCS decided not to extend or amend the Contract.

37. **DHCS responded to Senator Kamlager's question, among others, in a September 8, 2022 letter, signed by defendant Michelle Baass. DHCS confirmed that it refused to extend or amend the Contract because AHF engaged in speech with a presumed intent to inspire further speech, protest, or petitions to the government.**

> **However, last fall, AHF engaged in inappropriate negotiation tactics, including sending unapproved notices to their members without obtaining pre-approval of those notices from DHCS.** The presumed intention of those notices was to make AHF members think that they would soon lose their care manager and services from AHF and cause members to contact DHCS in protest.

38. DHCS appears to interpret the Contract to permit DHCS to retaliate against AHF for constitutionally protected speech, and to discourage constitutionally protected protests by Positive Healthcare members, concerning a matter of public importance, namely, the actions and conduct of government in the expenditure of taxpayer funds to treat people living with AIDS.

39. DHCS expressly intended that its actions, and its interpretation and attempted "enforcement" of the Contracts in this matter, discourage or outright thwart AHF and Positive Healthcare members from exercising their constitutional rights to speech, to engage in protest, and to petition the government regarding the services the government provides to people living with AIDS. DHCS also expressly intended to punish and retaliate against, and did punish and retaliate against, AHF and Positive Healthcare members for their exercise (and even potential exercise) of constitutionally protected conduct by refusing to extend or amend the Contract thereby depriving Positive Healthcare members of uniquely successful treatment protocols and systems specifically developed for people living with AIDS.

Compl. ¶¶ 36–39 (emphasis added). As such, the Nov. 2021 Letter falls within the category of documents referenced in the complaint and central to the plaintiff's claim of which courts generally take judicial notice. *Corinthian Colleges*, 655 F.3d at 999. Indeed, the Court took judicial notice of this letter and listed it, verbatim, in its PI Order. *See* PI Order at 5–7. Moreover, the Court finds that, contrary to the DHCS Defendant's contentions, the Complaint sufficiently alleges that the Department was aware of the nature of AHF's speech.

Second, the Court finds that AHF has properly alleged that the Nov. 2021 Letter addressed a matter of public concern. The DHCS Defendants characterize the context of the letter as revealing the "inherently private nature of the dispute addressed by AHF's speech." MTD at 18.

Although the Nov. 2021 Letter addressed a dispute between two contracting parties that may be characterized a private grievance, AHF has properly alleged that the letter also touched on a

matter of public concern—the continuing of a healthcare plan tailored to Medi-Cal beneficiaries diagnosed with AIDS. AHF has also properly alleged that the letter also addressed the State of California's budget and projected surpluses for 2022, which led AHF to believe it to be "unthinkable" that the Department would not be able to increase the rates AHF demanded. Nov. 2021 Letter. In addition, AHF has properly alleged that the letter noted its belief that this decision "will add to California's long-term healthcare costs, because studies have shown time and again that those who have less access to healthcare now tend to get sicker and need more expensive care later." *Id.* AHF thereafter provided contract information for enrollees to "let the DCHS" know how they feel. *Id.*

Thus, the Court finds that AHF has properly alleged that the Nov. 2021 Letter involved a matter of public concern. *See Pickering*, 391 U.S. at 565 (teacher commented on matters of public concern when he sent a letter to local paper attacking School Board's handing of fiscal issues and allocation of financial resources); *Johnson v. Multnomah Cnty, Or.*, 48 F.3d 420, 425 (9th Cir. 1995) (noting that while employee's speech may have arisen from not having been promoted it "concerned information that is of inherent relevance to the public's evaluation of the performance of government agencies." (internal quotations omitted)). The fact that it is alleged that the Nov. 2021 Letter was sent to only those enrolled in the PHC Special Needs Plan and not to the general public is not dispositive in determining whether AHF has properly alleged that the speech addressed a matter of public concern. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1068 n.5 (9th Cir. 2013). As AHF has properly alleged, in the letter, AHF speaks to the state's budget surpluses received and projected for 2022, as well as possible increases to long term healthcare costs for California—information that is more akin to "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *See Alpha Energy Savers, Inc.*, 381 F.3d at 924 (internal quotations and citation omitted). Moreover, AHF has properly alleged that the decision to allow the Contract to expire prompted inquiries from the Los Angeles County Delegation and Senator Kamlager. Compl. ¶ 36. This evidence further supports the finding that the Nov. 2021 Letter addressed matters of public concern.

The DHCS Defendants, in their Reply, offer no additional argument in support of its contention that AHF has not properly alleged its speech was not on a matter of public concern, only resting on its assertion that AHF failed to plead the contents of its Nov. 2021 Letter. Reply at 7. However, as the Court has already concluded, AHF's Complaint sufficiently references the Nov. 2021 Letter such that judicial notice may be taken of the letter, and its contents and the Complaint sufficiently allege that the Department was aware of the nature of AHF's speech. As a result, the Court concludes that AHF has sufficiently alleged that the Nov. 2021 Letter addressed matters of public concern. The Court therefore DECLINES to grant the Motion on this basis.

ii.   AHF has sufficiently alleged that its speech was sent in its private capacity.

Next, the DHCS Defendants contend that AHF's speech was sent in its official, not private, capacity. MTD at 18–21. When determining whether the speech is undertaken pursuant to the speaker's official duties or as a private citizen, courts consider the party's official responsibilities. *See Posey v. Lake Pend Oreille Sch. Dist., No. 84*, 546 F.3d 1121, 1127 (9th Cir. 2008). "[S]tatements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform." *Id.* at 1127 n.2 (alterations, citation, and internal quotation marks omitted). The Ninth Circuit looks to "three non-exhaustive factors to make this assessment: (1) whether 'the employee confined his communications to his chain of command'; (2) whether 'the subject matter of the communication' fell within the plaintiff's regular job duties; and (3) whether the 'employee sp[oke] in direct contravention to his supervisor's order[].'" *Greisen v. Hanken*, 925 F.3d 1097, 1111 (9th Cir. 2019) (quoting *Dahlia v. Rodriguez*, 735 F.3d 1060, 1074–75 (9th Cir. 2013) (en banc)) ("*Dahlia* Factors"). "The scope and content of a plaintiff's official duties are questions of fact, but a court must 'independently . . . evaluate the ultimate constitutional significance of the facts as found.'" *Id.* (quoting *Posey*, 546 F.3d at 1129).

As to the first *Dahlia* Factor—whether the employee confined his communications to his chain of command—the Court finds this factor to be neutral as applied to the facts here. As alleged, the Nov. 2021 Letter was issued to PHC California enrollees, individuals who likely expected or had

likely received in the past notices from AHF. Per the allegations in the complaint, AHF did not send the letter to the general public, nor did it send the letter to anyone at the Department conceivably "up the chain of command" which AHF might be expected to address contract or fiscal complaints. *See Dahlia*, 735 F.3d at 1076 (concluding "the only reasonable conclusion" was that officer acted pursuant to his job duties when he—as a detective investigating the . . . robbery[]—reported up the chain of command to the supervising lieutenant overseeing the investigation about abuse related to that same investigation."); *Freitag v. Ayers*, 468 F.3d 528, 546 (9th Cir. 2006) (noting plaintiff's "internal reports of inmate sexual misconduct and documentation of the prison's failure to respond" was *not* constitutionally protected because she "submitted those reports pursuant to her official duties as a correctional officer and thus not in her capacity as a citizen.").

With respect to the second *Dahlia* factor, the Court recognizes that per the allegations in the Complaint, the Contract's terms support the contention that at least some of the letter's contents was AHF speaking in its official capacity as the operator of the PHC Special Needs Plan. Ultimately, however, this factor weighs in favor of finding that AHF has alleged that it spoke outside of its official capacity as a contractor.

As alleged, AHF begins the Nov. 2021 Letter by reminding members that it is AHF "is always here to serve [their] healthcare needs under all circumstances" and that AHF is "writing to tell [them] that PHC California, the Medi-Cal health plan which is operated by AHF, ***may*** sunset[.]" Nov. 2021 Letter. AHF properly alleges that it goes on to inform members what to expect after December 31, 2021, provide advice to members about what they should do in the meantime, and inform members of what options they would have if the PHC plan ended on December 31, 2021. *Id.* But although this content can be said to relate to AHF's position in operating the PHC Special Needs Plan through its Contract with the Department, AHF alleges that it did not inform enrollees about what will occur, but only what "***may***" occur and how enrollees can petition to avoid this result. *Id.*

Moreover, AHF properly alleges that the latter part of the letter addresses different concerns that tend to fall further outside of AHF's role as a contractor and more as a private actor informing others of matters of public concern. *Id.* As alleged, AHF discloses that the Department has not been able to provide AHF with rates sufficient to cover enrollees' healthcare costs. *Id.* AHF alleges that it

then points out that the State "has experienced several years of continuous budget surpluses, with another surplus projected for 2022" and that AHF believes it is "unthinkable that in spite of these surpluses" the Department cannot meet AHF's financial needs to continue the PHC Special Needs Plan. *Id.* AHF also alleges that in the letter it expresses its belief that this decision "will add to California's long-term healthcare costs, because studies have shown time and again that those who have less access to healthcare now tend to get sicker and need more expensive care later." *Id.* AHF alleges that it ends its letter by implicitly encouraging members to contact the Department if they wished to let the Department know how they felt "about its decision not to adequately fund" plan. *Id.*

> The proper inquiry is a practical one. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary or sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

*Garcetti*, 547 U.S. at 424–25. Applying these principles here, whether the Contract required AHF to send notices to members addressing even potential changes to their PHC Special Needs Plan is also "neither necessary or sufficient to demonstrate that" AHF has properly alleged that sending the Nov. 2021 Letter with within the scope of AHF's professional duties for First Amendment purposes. Applying a practical inquiry to the facts alleged yields the conclusion that informing enrollees that the PHC Special Needs Plan may soon expire because of a financial dispute and critiquing the Department's use of funds in light of the State's budget surpluses, as well as projecting the impact on California's long term healthcare costs does not appear to be within AHF's role or responsibilities as a contractor for the Department. Nor does it appear that AHF's allegations indicate that it spoke as a contractor for the Department when it provided contact information to enrollees implicitly encouraging them to contact the Department directly and let it know how they feel about the expiration of the plan.

Accordingly, as alleged, the letter's contents align closer to cases which have found the disclosure of misconduct or complaints to be speech conducted in a private capacity. *See, e.g.*,

*Greisen*, 925 F.3d at 1111–12 (concerns related to "ferreting out 'corruption or systemic abuse' in city finances and management" were not part of plaintiff's official duties as chief of police); *Freitag*, 468 F.3d at 546 (holding it was "certainly not part of [plaintiff's] official tasks to complain" to a senator or the California Inspector General about the states failure to take corrective action regarding complaints of sexual harassment); *Marable v. Nitchman*, 511 F.3d 924, 932 (9th Cir. 2007) (plaintiff's complaints regarding his superiors' allegedly corrupt overpayment schemes were not part of his official job duties as a Chief Engineer for a ferry); *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1104 (9th Cir. 2011) ("[S]peech discussing 'threats to public safety' is 'of vital interest to citizens,' and speech exposing policies that put people in jeopardy is 'inherently of interest to the public.'" (quoting *Hyland v. Wonder*, 972 F.2d 1129, 1137 (9th Cir. 1992))). AHF is discussing the state's budget surplus, how that budget is being used, and AHF's views on how to limit California's long-term healthcare costs; these are all quintessentially matters of public concern.

Turning to the final *Dahlia* factor—whether the employee spoke in direct contravention to his supervisor's order—this factor weighs in favor of finding that AHF has alleged that it spoke outside of its official capacity.  According to the Department, AHF's act of sending the Nov 2021 Letter without their approval was in direct contravention to the Contract's requirements. Although AHF disputes that its conduct breached the Contract or was otherwise governed by the Contract, this factor tends to support that AHF has alleged it acted outside its official capacity as contractor when it chose to distribute the Nov. 2021 Letter to enrollees without the Department's notice or approval, whether that breached the Contract or not.

The DHCS Defendants' Reply again focuses primarily on the fact that AHF's Complaint failed to allege the contents of its Nov. 2021 Letter or that the Department was aware of the nature of this speech at the time the contracting decision was made. Reply at 7–8. However, as the Court has already concluded, AHF's Complaint sufficiently references the Nov. 2021 Letter such that judicial notice may be taken of the letter and its contents, and the Complaint sufficiently alleges that the Department was aware of the nature of AHF's speech. As a result, the Court finds that AHF has adequately alleged that its speech was sent in its private capacity. The Court therefore DECLINES to grant the Motion on this basis.

iii.   AHF has sufficiently alleged that the DHCS Defendants' actions were not constitutionally permissible.

The DHCS Defendants contend that the Department's decision to allow the contracts to expire is constitutionally permissible because AHF failed to comply with the Contract's prior-approval provisions. MTD at 21–25.

The Department can prevail "if it can persuade [the Court] that [its] legitimate interests as contractor, deferentially viewed, outweigh the free speech interest at stake." *Umbehr*, 518 U.S. at 685. "Independent government contractors are similar in most relevant respects to government employees, although both the speaker's and the government's interest are typically—although not always—somewhat less strong in the independent contractor case." *Id.* at 694–85. "The government bears the burden of showing that under the *Pickering* balancing test, 'the relevant government entity had an adequate justification for treating the [contractor] different from any other member of the general public.'" *Clairmont*, 632 F.3d at 1106. The Department "must establish its 'legitimate administrative interests outweigh'" AHF's First Amendment rights. *Id.* (quoting *Eng*, 552 F.3d at 1071). Such interest may include "promoting efficiency and integrity in the discharge of official duties and maintaining proper discipline in the public service." *Id.* at 1106–07 (citing to *Connick*, 461 U.S. at 150–51).

The DHCS Defendants argue that the Court should apply a "rational relationship" test to determine that they permissibly took adverse action against AHF based on the Nov. 2021 Letter because their action was "rationally related" to the Contracts. *Id.* The DHCS Defendants previously offered the same line of argument in its PI Motion. However, at the hearing on the PI Motion, counsel for the Department could point to no authority to support the proposition that this rational inquiry should be applied as part of the *Pickering/Umbehr* balancing test. PI Order at 30–31. The DHCS Defendants have not offered any additional support here. As such, the Court again declines the Department's invitation to insert a rational basis inquiry to the issue presented.

The Supreme Court noted in *Umbehr* that the "unconstitutional conditions precedents span a spectrum[.]" *Umbehr*, 518 U.S. at 680 (collecting cases). The Court took care to acknowledge the different interests raised when the speaker has a relationship to the state actor closer to that of a

member of the public. *Id.* at 677–78. "Independent contractors appear[ed]" to the Supreme Court "to lie somewhere between the case of government employees, who have the closest relationship with the government" and the Court's other precedent "which involve persons with less close relationships with the government." *Id.* The Court reasoned:

> *Umbehr* is correct that if the Board had exercised sovereign power against him as a citizen in response to his political speech, it would be required to demonstrate that its action was narrowly tailored to serve a compelling government interest. But in this case, as in government employment cases, the Board exercised contractual power, and its interests as a public service provider, including its interest in being free from intensive judicial supervision of its daily management functions, are potentially implicated. Deference is therefore due to the government's reasonable assessments of its interests as contractor.
>
> We therefore see no reason to believe that proper application of the *Pickering* balancing test cannot accommodate the differences between employees and independent contractors.

*Id.* at 678.

Additionally, in cases analyzing both as-applied and facial challenges to a public employer's social media policy—which also limit or regulate speech—the Ninth Circuit has applied the *Pickering* balancing test. *See, e.g.*, *Hernandez v. City of Phoenix*, 43 F.4th 966, 979 (9th Cir. 2022) (in analyzing facial challenge to employer social media policy limiting speech the court applied "a modified *Pickering* balancing analysis that closely tracks the test used for First Amendment retaliation claims"); *Moser v. Las Vegas Metro. Police Dep't*, 984 F.3d 900, 902 (9th Cir. 2021) (applying *Pickering* balancing test to plaintiff's claim for First Amendment retaliation after employer enforced of social media policy and took adverse action against employee for speech made on Facebook). Although the Contract's limits on AHF's speech may be a fact to consider, the Department cannot avoid liability for First Amendment retaliation by merely arguing the Contract's terms are rationally related to the Department's interests.

Thus, the Supreme Court's framework set out under *Umbehr* and *Pickering* governs the facts of this case. *See Umbehr*, 518 U.S. at 678, 685. The Court now turns to the merits of the balancing test set out under *Pickering*, "adjusted to weigh the government's interests as a contractor rather than as employer[.]" *Umbehr*, 518 U.S. at 673.

The administrative interest the Department identifies is its interest in "enforcing these valid contractual provisions." MTD at 24. This formulation of the Department's interest is a bit circular. The ultimate question before the Court will be whether terminating the Contract because of AHF's speech is constitutional. Put differently, whether the Department's enforcement of the pre-approval requirement and speech limitations—is constitutional. So, to say that the Department has an interest in enforcing its Contract does not itself answer the constitutional question.  The inquiry is: what interest is served through enforcement of the Contract's terms?  To this end, it appears the Department's interest is ensuring "adequate and accurate communication between the Department's contracted MCPs and those beneficiaries."[12] *Id.* at 23. Thus, to the extent that the Department is arguing that AHF's speech disrupted its ability to ensure adequate communication with Medi-Cal beneficiaries, that is a determination that must be made on the facts at a later stage of the litigation, not on a Motion to Dismiss where the Court assumes the truth of the allegations in the Complaint.

As the Ninth Circuit has recognized "the relative value of an employee's speech in advancing First Amendment interests factors into the balancing calculus[.]" *Hernandez*, 43 F.4th at 977; *see also Connick*, 461 U.S. at 152 ("We caution that a stronger showing may be necessary if the employee's speech more substantially involved matters of public concern.")  "Government employee speech that exposes wrongdoing or corruption within the employee's own agency lies at 'the apex of the First Amendment'[.]"  *Id.* at 979 (citations omitted); *see also id.* (noting that police officer's Facebook posts occupied "a much lower rung on the First Amendment hierarchy," only touching

---

[12] At the hearing on this motion, the Department sought to clarify its interest, indicating that it also has an interest in ensuring that the trust enrollees have in AHF as speaking for the Department is not eroded. According to counsel, "we need to have patient trust that when one of our contractors tells them something—some important information about their medical benefits—that they are essentially speaking for the Department." In addition, counsel argued, the contract created a "trusted channel of communication" with patients and AHF "traded on that trusted channel of communication and potentially put it at risk in a way that down the line creates the possibility of disruption of government services." Leaving aside the fact that this appears to be a new argument not previously raised, it does not appear to this Court that this interest—based on the allegations in the Complaint—is sufficiently weighty to tip the *Pickering* balancing test in the Department's favor. Particularly given the allegations in the Complaint about the nature of the prior relationship that AHF had with its enrollees, and drawing all inferences in AHF's favor, the allegations in the complaint adequately support a conclusion that this interest is negligible and therefore AHF's free speech rights outweigh all of the Department's interests. (There is, of course, a factual dispute as to whether any such trust existed and/or was actually eroded as a result of the letter).

matters of public concern in a limited sense). Taking the allegations of the Complaint as true and drawing all inferences in favor of AHF, the Court concludes that AHF's speech appears to occupy a higher rung as it criticized the Department's handling of finances and outlined possible consequences to enrollees and California's long term healthcare costs if the PHC Special Needs Plan expired.[13] Balancing the parties' interest—"adjusted to weigh the government's interests as a contractor rather than as employer"—the allegations in the Complaint do not demonstrate the Department's interest outweighs AHF's speech rights.

The Court therefore finds that AHF has adequately alleged facts suggesting that its interests outweigh those of the Department. The Court therefore DECLINES to grant the Motion on this ground.

## CONCLUSION

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The Motion is GRANTED as to all claims (Claims 1–6) against the Department WITHOUT PREJUDICE;

2. The Motion is DENIED with respect to the federal constitutional claims (Claims 1–3) against Director Baass;

3. The Motion is GRANTED with respect to the state constitutional claims (Claims 4–6) against Director Baass WITHOUT PREJUDICE; and

4. The Request for Judicial Notice is GRANTED.

   **IT IS SO ORDERED.**

Dated: March 30, 2023

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

---

[13] At the hearing on this Motion, the Department argued that AHF's speech does not occupy such a high rung because AHF agreed to the preapproval provision. Particularly given the disputes about the meaning and scope of the preapproval provision, and drawing all inferences in AHF's favor, the allegations in the Complaint adequately support heavily weighting AHF's interest to this degree at this stage. The government's interest—even if increased negligibly by the "erosion of trust" interest articulated at the hearing and discussed above, *see supra* note 12—still does not outweigh AHF's particularly weighty free speech rights.